**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-00669-STV

THE DURANGO COFFEE COMPANY, a Colorado corporation;
and THE ORIGINAL DURANGO COFFEE COMPANY, a
Colorado Corporation

Plaintiffs,

v.

THE SAN JUAN COFFEE COMPANY, a Colorado corporation;
MOOSE LAKE COMPANIES, INC., an Arizona corporation;
BACKROADS COFFEE & TEA, INC., a Wisconsin corporation;
MIDWEST ROASTERS, LLC, a Wisconsin limited liability company;
HAYWARD COFFEE CO., LLC, a Wisconsin limited liability company;
MATTHEW POBLOSKE, individually; SCOTT BIAGGI, individually;
TERESA PETERS, individually; and RODNEY PETERS, individually

Defendants.

## AMENDED COMPLAINT

Plaintiffs, The Durango Coffee Company (hereinafter referred to as "DCC" and

"Plaintiff") and The Original Durango Coffee Company by and through their attorneys,

Newbold Chapman and Geyer PC, by Graham M. Smith and Kenton L. Freudenberg

hereby bring this action against the above named defendants, and would allege as to all

counts the following:

### I. INTRODUCTION

This is an action seeking monetary damages and injunctive relief for:

(1) claims under the under the Federal Lanham Act including infringement of

Plaintiff's federally registered trademark "Durango Coffee Company," unfair competition,

and cybersquatting; such claims arise out of Defendants' use of the confusingly similar

name and trademark "Durango Roasters" and unauthorized use of "Durango Coffee Company," and the domain "DurangoCoffeeCompany.com;"

(2) Defendants' deceptive trade practices of false advertising, passing off, and falsely or misleadingly suggesting an affiliation with Plaintiff in civil violation of the Colorado Consumer Protection Act C.R.S. §§6-1-101, et. seq.;

(3) breach of a contract, a licensing agreement between Plaintiff and defendant The San Juan Coffee Company;

(4) intentional interference with that contract; and,

(5) common law trademark infringement and unfair competition.

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331, generally, and 15 U.S.C. §1121, specifically. This Court also has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. .§1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the present claims occurred in this district and because San Juan Coffee Company is an entity formed under the laws of the State of Colorado.

3. Pursuant to Colo. Rev. Stat. § 13–1–124 and by virtue of the Defendants transacting business within the State of Colorado; knowingly aiming their tortious conduct directly at Plaintiff, a Colorado corporation; and the harm from Defendants' conduct being directly felt within Colorado, this Court has personal jurisdiction over the Defendants. Fed. R. Civ. P. 4(k)(1)(A) and *Old Republic Ins. Co. v. Cont'l Motors, Inc.*,

877 F.3d 895, 903 (10th Cir. 2017)("The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *see* Fed. R. Civ. P. 4(k)(1)(A). Colorado's long-arm statute, Colo. Rev. Stat. § 13–1–124, extends jurisdiction to the Constitution's full extent. *Benton* [*v. Cameco Corp.*], 375 F.3d [1070], 1075 [(10th Cir. 2004)]; *Mr. Steak, Inc. v. District Court*, 194 Colo. 519, 574 P.2d 95, 96 (1978) (en banc).")

### III. PLAINTIFFS

4.     Plaintiff The Durango Coffee Company is a closely held Colorado corporation, whose principal place of business is 9 Burnett Court, Durango, CO 81301.

5.     Plaintiff The Original Durango Coffee Company is a closely held Colorado corporation, whose principal place of business is 9 Burnett Court, Durango, CO 81301.

### IV. DEFENDANTS

6. On information and belief Defendant, The San Juan Coffee Company ("San Juan") is Colorado corporation, whose principal place of business is 730 Main Ave, Durango, CO 81301.

7. On information and belief Defendant Moose Lake Companies, Inc. ("Moose Lake") is an Arizona corporation, whose principal place of business is 55 W. Franklin St, Tucson, AZ 85701.

8. On information and belief Defendant Backroads Coffee & Tea, Inc. ("Backroads") is a Wisconsin corporation, whose principal place of business is 11964 N Peters Road, Hayward, WI 54843.

9. On information and belief Defendant Midwest Roasters, LLC ("Midwest") is a

Wisconsin limited liability company whose principal place of business is 12050 N. Peters Road, Hayward, WI 54843.

10. On information and belief Defendant Hayward Coffee Co., LLC ("Hayward") is Wisconsin limited liability company whose principal place of business is 11964 N. Peters Road, Hayward, WI 54843.

11. On information and belief Defendant Matthew Pobloske ("Pobloske") is a resident of Pima County, Arizona; is an owner and director of defendant San Juan; is an owner, CEO, president, and director of defendant Moose Lake; and is an owner and director of defendants Backroads, Midwest, and Hayward.

12. On information and belief Defendant Scott Biaggi ("Biaggi") is a resident of Pima County, Arizona; is an owner and director of defendant San Juan; is an owner, secretary, and director of defendant Moose Lake; and is an owner and director of defendants Backroads, Midwest and Hayward.

13. On information and belief, defendant Teresa Peters is a resident of Sawyer County, Wisconsin.

14. On information and belief, defendants Rodney Peters is a resident of Sawyer County, Wisconsin.

15. On information and belief, defendants Rodney and Teresa Peters are founders, partners and  principals in defendants Backroads, Midwest, and Hayward (the "Wisconsin entities"). These entities have been involved in coffee related businesses, including coffee roasting and coffee house services, in the geographical area of Hayward, Wisconsin.

## V. BACKGROUND AND GENERAL ALLEGATIONS

4

16. The Durango Coffee Company, began its coffee roasting and wholesale business in 1984 as a sole proprietorship owned by Carl Rand; incorporated in 1989 as "The Durango Coffee Company," and, in 2009, split into Plaintiffs "The Durango Coffee Company" and "The Original Durango Coffee Company".

17. Plaintiff presently operates its business as a coffee roaster, wholesaler, and retailer of high quality coffee.

18. Since its inception Plaintiff has continuously used the name "Durango Coffee Company" publicly as a mark to identify its business and products, both directly or through related companies under 15 U.S.C. §1055.

19. The "Durango Coffee Company" mark ("DCC Mark") has become well recognized and has been registered since November 26, 1996 on the Principal Register of the U.S. Patent and Trademark Office as registration No. 2,018,786, ("the '786 registratin") attached hereto as Exhibit A and incorporated herein by this reference.

20. The "Durango Coffee Company" trademark registration has "incontestable" status under 15 U.S.C. §1065 and is conclusive evidence of the registration of the mark, the validity of the mark, DCC's ownership of the mark, and of DCC's exclusive right to use the mark in commerce under 15 U.S.C. §1115.

21. In 1990, Plaintiff purchased the building at 730 Main Avenue, Durango, Colorado 81301, and expanded its business to include a retail coffee shop serving coffee beverages using Plaintiff's coffee, selling Plaintiff's roasted coffee beans at retail, and retailing specialty kitchenware. All were operated under the DCC name and mark.

22. Plaintiff adopted and used numerous distinctive identifiers for its coffees and coffee blends including, inter alia, "Durango Blend", "Durango Coffee Company Blend",

"Durango Western Blend", "Durango Espresso" and "El Dorado Blend."

23. Later, DCC relocated its coffee roasting and wholesale business to another offsite facility in the area while continuing operation of the retail coffee shop and kitchenware store at the 730 Main Avenue location.

24. In 2004, Plaintiff sold the portion of its retail and coffee shop at the 730 Main Avenue location to an individual, Tim Wheeler, who incorporated as "The San Juan Coffee Company"—one of the defendants in this action. Pursuant to that sale, by documents dated March 4, 2004, San Juan assumed rights and obligations under a license of the "Durango Coffee Company" mark (the "DCC License") and under a lease of the 730 Main Avenue premises.

25. As detailed below, Mr. Wheeler is not a party to this action, having subsequently sold his full interest in San Juan to present individual defendants Biaggi and Pobloske.

26. The DCC License was conditioned upon Plaintiff being the exclusive provider of all coffee and coffee products sold by San Juan; required that San Juan would use the DCC Mark and no other conflicting marks for coffee and coffee products and coffee house services; and that use of the DCC Mark by San Juan would inure to the benefit of Plaintiff as a "related company" under 15 U.S.C. §1055.

27. The DCC License provided that San Juan could elect to terminate the license, but that San Juan "shall provide 6 months written notice to DCC upon election to do so."

28. For a period of approximately 11 years, while San Juan was under the ownership and control of Mr. Wheeler, the parties operated under the terms of the DCC

License. Plaintiff provided all roasted coffee required by San Juan including all bulk coffee used for the preparation of coffee beverages served by San Juan, all bulk coffee beans sold at retail (scooped into bags by consumers from bulk bins), and all prepackaged roasted coffee beans sold at retail. Sales of its coffee through San Juan constituted a significant portion of Durango Coffee Company's overall coffee sales.

29. During that period, San Juan continued to operate the coffee shop publicly under the terms of the DCC License, using the "Durango Coffee Company" mark on all relevant goods and services. San Juan never publicly used its own name for goods or services. San Juan promoted its licensed "Durango Coffee Company" coffee shop and retail store via an internet website at "Cooksandcoffee.com." San Juan also acquired the internet domain "durangocoffeecompany.com" and redirected all traffic for that domain to the "Cooksandcoffee.com" website. San Juan established a Facebook page under the Durango Coffee Company name and used that page for promotional purposes.

30. In 2015, defendants Pobloske and Biaggi purchased defendant San Juan as an entity and, with it, assumed all of San Juan's ongoing rights and responsibilities under the DCC License and under the lease of the 730 Main Avenue property.

31. Following its acquisition by Pobloske and Biaggi, defendant San Juan continued to operate publicly as Durango Coffee Company under the DCC License.

32. On information and belief, defendant San Juan—through defendants Pobloske and Biaggi—entered into an agreement with defendant Teresa Peters to have her manage San Juan and supply coffee to San Juan from one of her several defendant entities in Wisconsin.

33. On information and belief, defendant Teresa Peters assumed the title of "CEO" of San Juan and acquired a partial ownership interest in San Juan.

34. In February of 2017, the various shift managers at San Juan were summoned to a meeting to taste coffee from defendants Backroads, Hayward, and/or Midwest to see if that coffee tasted similar enough to Durango Coffee Company coffee for San Juan to pass it off as Durango Coffee Company coffee.

35. Then, in March of 2017, defendants Pobloske and Biaggi called a meeting of the San Juan staff at the retail coffee shop to inform them that San Juan would cease purchasing coffee from Durango Coffee Company.

36. At that same meeting, Pobloske and Biaggi informed the staff that San Juan would replace Durango Coffee Company coffee with a different coffee.

37. Finally, Pobloske and Biaggi — also at that same meeting— instructed the staff that they were not to inform San Juan's customers that San Juan would be passing off other coffee as Plaintiff's coffee.

38. In disregard of the 6 month notice requirement for elective termination in the DCC license, defendant Pobloske notified Plaintiff (via an email to Carl Rand, also addressed to defendants Biaggi and Peters) on or about May 15, 2017 that San Juan would begin providing its own roasted coffee beans starting June 1, 2017, would no longer require the license for DCC's trademarks, and would be rebranding its products and services.

39. San Juan, through Pobloske was specifically warned by a response from Rand not to "rebrand" using a name similar to "Durango Coffee Company."

40. San Juan, nonetheless, chose the similar name at issue here, "Durango

8

Roasters."

41. On or about May 16, 2017, Defendant Moose Lake filed an "intent to use" application, No. 87452055, with the U.S. Patent and Trademark Office ("USPTO") to register "Durango Roasters" as a trademark for, inter alia, "coffee shop" services. That application is presently under a partial refusal to register by the USPTO for being confusingly similar to Plaintiff's prior trademark and its '786 registration.

42. On or about May 24, 2017, Defendant Biaggi filed a statement of trade name with the State of Colorado on behalf of defendant San Juan for the trade name "Durango Roasters" for a business described simply as "coffee shop."

43. On or about May 31, 2017 trademark registration counsel for Moose Lake was warned by counsel for Plaintiff that "Durango Roasters" would be considered to be an actionable infringement of the registered "Durango Coffee Company" mark.

44. On information and belief any trademark use by defendant Moose Lake would be through San Juan as a "related company."

45. On information and belief, no later than June 1, 2017, San Juan began buying and using coffee beans roasted in Wisconsin by defendant Teresa Peters and/or one of her defendant entities and shipped to San Juan in Colorado. Those beans were used by San Juan for all "bulk" purposes, namely coffee used for preparation of coffee beverages and all bulk bin consumer retail sales of roasted coffee beans. At the same time, San Juan ceased buying bulk roasted beans from DCC, but continued to buy roasted coffee beans prepackaged for consumer retail sale in bags bearing a DCC label with the DCC mark.

46. On information and belief, at some later date during the summer of 2017,

defendant Peters and/or one of her defendant entities began also selling to San Juan, and San Juan began reselling, coffee bean prepackaged for consumer retail purchase in bags printed with the "Durango Roasters" name.

47. At about the same time San Juan completely ceased purchasing and reselling any of Plaintiff's coffee.

48. Through much of the summer of 2017 San Juan continued to operate its business to using the name "Durango Coffee Company" at the 730 Main Avenue location and at a booth operated weekly at the "Durango Farmer's Market" ("DFM"), an agriculturally themed outdoor market promoting locally produced goods and services.

49. San Juan continued to display or use "Durango Coffee Company" prominently on building signage, the banner displayed by San Juan at DFM, throughout the "COOKSANDCOFFEE.COM" website, on menus listing coffee beverages, on bins for bulk coffee, and on the Facebook page of San Juan. Employees continued to answer the phone "Durango Coffee Company."

50. San Juan used, and continues to use, Plaintiff's distinctive identifiers or confusingly similar variations for coffee and coffee blends.

51. On information and belief, San Juan and its business are located in Durango, Colorado. Despite using coffee beans roasted in Wisconsin, San Juan misrepresents its coffee as being "locally roasted." This misrepresentation was and is used on menu boards, on the San Juan website and the San Juan Facebook page.

52. At no point has San Juan taken any affirmative steps to distance itself from the Durango Coffee Company. To the contrary, over time San Juan continued to use "Durango   Coffee   Company"   and   "Durango   Roasters"   simultaneously   and

interchangeably throughout its website and Facebook page.

53. The actions or omissions of the various closely held defendant legal entities as described herein have been primarily through individual defendants Pobloske, Biaggi, and Peters, acting individually or acting in concert.

54. On information and belief, Defendant Pobloske authorized, directed or participated in the acts or omissions described herein of defendants San Juan, Moose Lake, Backroads, Midwest, and/or Hayward.

55. On information and belief, Defendant Biaggi authorized, directed, or participated in the acts or omissions described herein of defendants San Juan, Moose Lake, Backroads, Midwest, and/or Hayward.

56. On information and belief, Defendant Teresa Peters authorized, directed, or participated in the acts or omissions described herein of defendants San Juan, Moose Lake, Backroads, Midwest, and/or Hayward.

57. On information and belief, Defendant Rodney Peters authorized, directed, or participated in the acts or omissions described herein of defendants Backroads, Midwest, and/or Hayward.

### FIRST CLAIM FOR RELIEF
**Trademark Infringement Pursuant to 15 U.S.C. §1114 (Section 32 of the Lanham Act) Confusingly Similar Mark**

58. Plaintiff incorporates paragraphs 1 through 58 above as if set forth herein.

59. Plaintiff's mark, "Durango Coffee Company," is a valid, protectable and incontestable registered  mark within the meaning of the Lanham Act, § 32.

60. Defendant San Juan, without the consent or authorization of Plaintiff, has used and continues to use the name "Durango Roasters" in commerce in conjunction

with offering coffee house services, and for bulk and prepackaged roasted coffee beans. Such use is likely to cause confusion, or to cause mistake, or to deceive.

61. Defendants Backroads, Midwest, and/or Hayward, without the consent or authorization of Plaintiff, have used and continue to use the name "Durango Roasters" on prepackaged roasted coffee beans. Such use is likely to cause confusion, or to cause mistake, or to deceive.

62. Plaintiff has been, and will continue to be, damaged by Defendants' infringement of Plaintiffs' trademark.

63. San Juan's acts as described herein were carried out willfully and knowingly. Plaintiff is entitled to recover from all defendants its losses along with San Juan's profits pursuant to 15 U.S.C. § 1117 (a). Plaintiff is further entitled to increased actual damages pursuant to 15 U.S.C. § 1117 (a).

64. As a result of Defendants' willful and knowing conduct in adopting its trade name and trademark, this is an exceptional case. Plaintiff is entitled to recover from all defendants its attorney's fees and costs pursuant to 15 U.S.C. § 1117(a).

65. In addition to monetary damages, pursuant to 15 U.S.C. § 1116 (a) Plaintiff is entitled to a temporary and a permanent injunction enjoining the Defendant from using a name that is confusingly similar to Plaintiff's trademark, "Durango Coffee Company" in conjunction with the offering or promotion of coffee house services, coffee, or retail of kitchenware.

## SECOND CLAIM FOR RELIEF
**Trademark Infringement Under 15 U.S.C. § 1114 (Section 32 of the Lanham Act)**
**Unauthorized Use or Misuse of Plaintiff's Mark**

66. Plaintiff incorporates paragraphs 1 through 66 above as if set forth herein.

67. Defendant San Juan, without the consent or authorization of Plaintiff, has used Plaintiff's mark "Durango Coffee Company" in commerce on unauthorized goods and/or services, namely, in conjunction with offering coffee house services selling coffee beverages prepared with roasted coffee beans not supplied by Plaintiff, and for bulk roasted coffee beans not supplied by Plaintiff.

68. Such use by San Juan has never been authorized by Plaintiff. Such unauthorized use is likely to cause confusion, or to cause mistake, or to deceive.

69. Plaintiff has been, and will continue to be, damaged by Defendants' infringement of Plaintiff's trademark.

70. Defendants have used Plaintiff's mark in such unauthorized fashion willfully and knowingly. Plaintiff is entitled to recover it losses along with Defendants' profits pursuant to 15 U.S.C. § 1117 (a).

71. Defendants have used Plaintiff's mark in such unauthorized fashion willfully and knowingly. Plaintiff is entitled to treble its actual damages pursuant to 15 U.S.C. § 1117 (a).

72. As a result of Defendants' willful and knowing conduct in the misuse of Plaintiff's mark, this is an exceptional case. Plaintiff is entitled to recover its attorney's fees and costs pursuant to 15 U.S.C. § 1117(a).

73. In addition to monetary damages, pursuant to 15 U.S.C. § 1116 (a) Plaintiff is entitled to a temporary and a permanent injunction enjoining the Defendants from using "Durango Coffee Company," or any similar mark.

### THIRD CLAIM FOR RELIEF
**Unfair Competition - False Designation of Origin and False Advertising Under 15 U.S.C. § 1125 (a) (Section 43 the Lanham Act)**

74. Plaintiff incorporates paragraphs 1 through 74 above as if set forth herein.

75. San Juan's public promotion of its coffee beans in commercial advertising as being "locally roasted" is a false designation of origin, false or misleading description of fact, or false or misleading representation of fact.

76. Such promotion is likely to cause confusion; to cause mistake; or to deceive as to the affiliation, connection, or association of such with Plaintiff or as to the origin of San Juan's goods, services, or commercial activities in violation of 15 U.S.C. § 1125(a)(1)(A).

77. Such promotion misrepresents the nature, characteristics, qualities, or geographic origin of San Juan's coffee shop services and or its coffee and coffee beans in violation of 15 U.S.C. § 1125(a)(1)(B).

78. Defendants' use of "Durango Roasters" is false or misleading and is likely to cause confusion; to cause mistake; or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiff in violation of 15 U.S.C. § 1125(a)(1)(A).

79. Defendants' misuse of "Durango Coffee Company" on unauthorized goods and/or services is false or misleading and is likely to cause confusion; to cause mistake; to deceive as to the affiliation, connection, or association of Defendants with Plaintiff as to the origin, sponsorship, or approval of Defendants goods, services, or commercial activities by Plaintiff in violation of 15 U.S.C. § 1125(a)(1)(A).

80. Plaintiff has been, and will continue to be, damaged by Defendants' acts described herein.

81. San Juan's acts as described herein were carried out willfully and knowingly. Plaintiff is entitled to recover its losses along with San Juan's profits pursuant to 15 U.S.C. § 1117 (a). Plaintiff is further entitled to increased actual damages pursuant to 15 U.S.C. § 1117 (a).

82. Because San Juan's acts as described herein were carried out willfully and knowingly, this is an exceptional case. Plaintiff is entitled to recover its attorney's fees and costs pursuant to 15 U.S.C. § 1117(a).

83. In addition to monetary damages and pursuant to 15 U.S.C. § 1116(a), Plaintiff is entitled to a temporary and a permanent injunction enjoining the Defendants from falsely promoting its coffee as "locally roasted."

84. In addition to monetary damages, Plaintiff is entitled to a temporary and a permanent injunction enjoining Defendants from using "Durango Roasters", "Durango Coffee Company" or any similar marks in conjunction with promoting and/or selling their goods and/or services.

## FOURTH CLAIM FOR RELIEF
### Cybersquatting under 15 U.S.C. § 1125 (d)

85. Plaintiff incorporates paragraphs 1 through 85 above as if set forth herein.

86. Defendant San Juan continues to own and control the internet domain "DurangoCoffeeCompany.com" (the "DCC Domain") and renewed its registration of that domain on or about December 11, 2017.

87. The domain "DurangoCoffeeCompany.com" is essentially identical to Plaintiff's registered trademark "Durango Coffee Company" with only the addition of the top level domain identifier ".com"

88. Defendant San Juan has no legitimate interest in the ownership or control of

the DCC Domain.

89. Upon being notified by San Juan of its intent to sever its relationship with Plaintiff, Plaintiff demanded transfer to Plaintiff of the DCC Domain. Defendant San Juan, through defendant Pobloske, ignored and/or refused that demand.

90. Defendant San Juan, through defendant Pobloske, offered to sell the DCC Domain to Plaintiff.

91. Through December 11, 2017 San Juan continued to redirect the DCC Domain to the website of San Juan.

92. Since renewing its registration of the DCC Domain on or about December 11, 2017, San Juan has "parked" the domain, leaving it inactive and unavailable to Plaintiff. The domain displays only a message "Sorry - there's nobody home... If you are interested in purchasing this domain, please contact us." The contact link provided is to email for "pobloske@gmail.com" which, on information and belief, is a personal email address for defendant Pobloske.

93. Defendant San Juan, through defendant Pobloske, has demonstrated a bad-faith intent to profit or benefit from its control of the DCC Domain by, inter alia, holding the domain "hostage" and offering to sell it to Plaintiff; by improper domain use in redirecting the DCC Domain to the website of San Juan; by preventing Durango Coffee Company customers from reaching a legitimate source of Plaintiff's coffee; and by renewing the DCC Domain while fully aware that San Juan had no legitimate use for or claim to the domain.

94. Plaintiff is entitled to recover its losses or statutory damages pursuant to 15 U.S.C. §1117(d).

95. Plaintiff is further entitled to an order of the Court directing transfer of the DCC Domain to Plaintiff  by San Juan, the Internet Corporation for Assigned Names and Numbers ("ICANN"), or any other appropriate Internet registrar or authority.

96. Due to the bad faith of defendants San Juan, Pobloske, Biaggi, and Peters, this is an exceptional case. Plaintiff is entitled its attorney's fees pursuant to 15 U.S.C. §1117(a).

**FIFTH CLAIM FOR RELIEF**
**Deceptive Trade Practices Under Colorado Law Colorado Consumer Protection Act, C.R.S. § 6-1-101, et seq.)**

97. Plaintiff incorporates paragraphs 1 through 97 above as if fully set forth herein.

98. Defendant San Juan has engaged in deceptive trade practices in violation of C.R.S. § 6-1-105 by  the acts of San Juan in the course of its business as described herein.

99. In the course of its business, San Juan falsely represents and promotes that it uses "locally roasted" coffee.

100. Such false representation is a deceptive representation or designation of geographic origin in connection with goods and/or services of San Juan in violation of C.R.S. § 6-1-105(d)

101. In the course of its business, Defendant San Juan has knowingly passed off its goods and services as those of Plaintiff by using of the name "Durango Coffee Company" on or in conjunction with the unauthorized goods and/or services of San Juan, namely, those based upon or use coffee not roasted or provided by Plaintiff. Such passing off is in violation of C.R.S. § 6-1-105(a).

102. In the course of its business, Defendant San Juan has knowingly and improperly used "Durango Coffee Company" on unauthorized goods and or services. Such use constitutes a false representation as to the source, sponsorship, approval, or certification of San Juan's goods and/or services in violation of C.R.S. § 6-1-105(b) and is a false representation as to the affiliation, connection, or association of San Juan with Plaintiff in violation of C.R.S. § 6-1-105(c).

103. San Juan's deceptive trade practices significantly impact the public as actual or potential consumers of the Defendants' goods or services.

104. Plaintiff, in the course of its business, has been and will continue to be injured by Defendants' acts described herein.

105. Plaintiff is entitled to recover against Defendants its actual damages under C.R.S. §6-1-113 (2)(a)(I) or statutory damages under C.R.S. §6-1-113 (2)(a)(II).

106. San Juan's deceptive trade practices have been undertaken in bad faith, thereby entitling Plaintiff to recover treble its actual damages against Defendants under C.R.S. § 6-1-113 (2)(a)(III).

107. Plaintiff is entitled to recover its attorney's fees and costs against Defendants pursuant to C.R.S. § 6-1-113 (2)(b).

108. In addition to monetary damages, Plaintiff is entitled to a temporary and a permanent injunction enjoining the Defendant engaging in its deceptive practices.

## SIXTH CLAIM FOR RELIEF
### Breach of Contract Under Colorado Law

109. Plaintiff incorporates paragraphs 1 through 109 above as if set forth herein.

110. The DCC License was executed March 4, 2004 between Plaintiff as licensor and San Juan as  licensee within the state of Colorado.

111. A primary condition of the DCC License sets forth that: "As a condition of the grant of this License, Licensee agrees to purchase and DCC agrees to sell in such amounts as may be required, all coffee and related products, to be sold or served at retail under the DCC Marks from DCC at published wholesale prices of DCC."

112. The DCC License further sets forth that "Licensee may elect to terminate this license agreement and shall provide 6 months written notice to DCC upon election to do so."

113. San Juan openly disregarded the "6 months written notice" requirement for termination.

114. While the license was in effect, San Juan began purchasing coffee used for its business from other sources—namely defendants Teresa Peters, Rodney Peters and/or defendants Backroads, Midwest, and Hayward—in contravention of the license agreement.

115. The DCC License further required that "Licensee shall where possible, use the Durango Coffee Company mark as a designation of source on products and/or services provided by licensee" and that "Licensee shall not use or sell coffee products bearing other trademarks which might be considered directly competitive with Durango Coffee Company products and which might tend to weaken or dilute the strength of the Durango Coffee Company mark, or which may suggest a false affiliation with other providers."

116. While the DCC License was in effect, San Juan ceased using the mark "Durango Coffee Company" for its goods and services in the manner required by the license agreement.

117. While the DCC License was in effect, San Juan began using the name "Durango Roasters" for its goods and services in contravention of the license agreement.

118. The acts and omissions of San Juan described herein constitute a breach of the DCC License by San Juan.

119. Plaintiff is entitled to recover damages for such breach in an amount to be proven at trial.

120. The DCC License further provided in part that "Should any litigation be commenced between the parties to this Agreement, the party prevailing in such litigation shall be entitled, ... to a reasonable sum as and for its attorney's fees and costs."

121. Plaintiff is entitled to recover its attorney's fees and costs pursuant to the provisions of the DCC  License agreement.

## SEVENTH CLAIM FOR RELIEF
### Intentional Interference with Contractual Relations Under Colorado Law

122. Plaintiff incorporates paragraphs 1 through 122 above as if set forth herein.

123.  The DCC License agreement San Juan and Plaintiff was, inter alia, a "requirements" contract  under which San Juan was to purchase all coffee from Plaintiff.

124. Defendants Theresa Peters, Backroads, Midwest, and/or Hayward knew or reasonably should have known of the existence of the DCC License.

125. Defendants Theresa Peters, Backroads, Midwest, and/or Hayward, by words or conduct or both, intentionally interfered with San Juan's performance of the DCC License, thereby causing San Juan not to perform its obligations to Plaintiff under the DCC License.

126. The Defendants' interference with the DCC License was improper.

127.   The Defendants' interference with the DCC License caused loss or damages to Plaintiff.

128. Plaintiff is entitled to recover its damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### Common Law Unfair Competition and Trademark Infringement
### Under Colorado Law, C.R.S. 7-70-103(2) and (3)

129.   Plaintiff incorporates paragraphs 1 through 129 above as if set forth herein.

130.   By virtue of its long-term use and promotion, the Durango Coffee Company mark has become distinctive of the goods and services of Plaintiff.

131.   The use by defendants of the name "Durango Roasters" is likely to deceive, confuse and mislead consumers and the general public.

132.   The unauthorized use by defendants of "Durango Coffee Company" by defendants is likely to deceive, confuse and mislead.

133.   The use by San Juan of Plaintiff's distinctive identifiers for coffees and blends or use of confusingly similar variations thereof is likely to deceive, confuse and mislead consumers and the general public.

134.   The conduct of defendants constitutes unfair competition under Colorado law.

135.   Plaintiff has been, and will continue to be, damaged by Defendants' misuse and/or infringement of Plaintiff's trademark.

136.   The conduct of defendants has been willful, wanton or reckless in disregard of the rights of Plaintiff.

137.   Plaintiff will suffer irreparable harm unless the continued misuse and/or infringement of Plaintiff's trademark is preliminarily and permanently enjoined.

WHEREFORE, Plaintiff requests that the Court award it the following relief against all Defendants:

A.  Plaintiff's actual damages, including Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), Colorado common law, and/or as set forth

by C.R.S. § 6-1-113(2)(a);

B. In the alternative, as may be appropriate, statutory damages under C.R.S. § 6-1-113 (2)(a);

C. In the alternative, as may be appropriate, statutory damages under 15 U.S.C. §1117(d) in the amount of $100,000;

D. Treble Plaintiff's damages pursuant to 15 U.S.C. § 1117 (a) and C.R.S. § 6-1-113(2)(a)(III);

E. If in the event the Court should determine Plaintiff's actual damages are not just, then a just amount pursuant to 15 U.S.C. § 1117 (a);

F. Plaintiffs attorney's fees pursuant to 15 U.S.C. § 1117 (a), C.R.S. § 6-1-113; and/or the provisions of the DCC License.

G. Pre-judgment and post-judgment interest;

H. A permanent injunction pursuant to the Colorado Consumer Protection Act and/or 15 U.S.C. §1116 prohibiting Defendants from using on or in conjunction with its goods or services the names "Durango Coffee Company," "Durango Roasters," any name or designation that is confusingly similar to Plaintiff's trademark and trade name, or any name which may which may falsely or misleadingly suggest an affiliation with Plaintiff.

I. A permanent injunction pursuant to the Colorado Consumer Protection Act and/or 15 U.S.C. §1116 prohibiting Defendants from using any description or promotion which might falsely or misleadingly suggest that defendants roast their coffee in their local area.

J. An order of the Court directing transfer of the "DurangoCoffeeCompany.com"

domain to Plaintiff by San Juan, the Internet Corporation for Assigned Names and Numbers ("ICANN"), or any other appropriate Internet registrar or authority.

K. An order of the Court directing express abandonment by defendant Moose Lake of the "Durango Roasters" federal trademark registration application, No. 87452055, and/or cancellation by the USPTO of any resulting registration, as may be appropriate,

L. Any other relief which the Court deems just and proper.

RESPECTFULLY SUBMITTED this 27th day of March, 2018.

NEWBOLD CHAPMAN & GEYER PC

By: */s/ Graham M. Smith*
Graham M. Smith
150 East Ninth Street, Suite 400
Durango, CO 81301
(970) 247-3091
gsmith@ncg-law.com

And

*/s/ Kenton L. Freudenberg*
Kenton L. Freudenberg
Attorney at Law
4 Junction Lane
Durango, CO 81301
(970) 259-2765
freudlaw@aol.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 27th day of March, 2018, a true and correct copy of the foregoing was served via the Court's electronic filing system on the following counsel of record:

John M. Palmeri, Esq.
John R. Mann, Esq.
Gordon & Rees LLP
jpalmeri@grsm.com
jmann@grsm.com
*Attorneys for defendants*

          */s/ Graham M. Smith*
          Graham M. Smith

Data:WP:9382:01:Pleadings-US Dist Ct:Amended Complaint.docx